UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**ROXANNE B CHAPELLE**  CASE NO. 6:22-CV-05296

**VERSUS**  JUDGE ROBERT R. SUMMERHAYS

**COMMISSIONER OF SOCIAL SECURITY**  MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Roxanne Chapelle, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for supplemental security income insurance benefits, alleging disability beginning on August 27, 2020.[1] (Rec. Doc. 10-1, p. 220). Her application was denied. She then requested a hearing, which was held on December 16, 2021, before Administrative Law Judge Charles Brower. The ALJ issued a decision on February 24, 2022, concluding that

---

[1] Claimant initially claimed a September 7, 2012 onset date. At the ALJ hearing, she amended the onset date to August 27, 2020. See Rec. Doc. 10-1, p. 54; 220.

Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 10-1, p. 18-27). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 10-1, p. 5). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on November 5, 1973. She was 46 years old on the alleged disability onset date and 48 years old at the time of the ALJ's decision. She has a high school diploma and associates degree in accounting. She last worked with a finance company in collections in 2013, when she had a seizure on her way to work. She has been living off the life insurance policy proceeds from her late husband and otherwise has no income. (Rec. Doc. 10-1, p. 54-58).

Claimant alleged that she has been disabled since September 2012 due to a seizure disorder. She testified she has seizures on average from once a week to once a month, despite multiple seizure medications, for which her physician permanently suspended her drivers' license. (Rec. Doc. 10-1, p. 43-45). She also suffers from diabetes, arthritis in her hips and shoulders, brain lesions which affect her memory,

and partial amputation of her pinky toe and side of her foot which causes a balance problem. (Rec. Doc. 10-1, p. 45-48).

The medical records in the record reveal the following pertinent history:

- Claimant has treated for primary care primarily with Dr. Charles Aswell. These records evidence a history of hypertension, seizure disorder, deep venous thrombosis (DVT), Type 2 diabetes, severe anxiety, depression, and insomnia, and arthritis in her fingers, hip, and knees. On March 26, 2020, Dr. Aswell noted she had experienced two seizures over the last few months. She was treated with medication, which was often adjusted in an attempt to control her seizures. In August 2020, he noted a severe history of chronic DVT and pulmonary embolism with continued seizures, often in her sleep. She was unable to drive or take care of her grandchild because of her severe seizure activity. There was also a note of a past cerebral vascular accident. She was noted as a smoker. More recently, in 2021, she noted several instances of dropping things and falling, with dizziness and syncope. A spinal tap in mid-2021 was negative for neck lesions. In late 2021 she suffered a diabetic foot ulcer, which eventually led to amputation of her fifth toe. (Rec. Doc. 10-1, p. 333-42; see also p. 496-516).

- Dr. Aswell completed a medical source statement on August 12, 2020 in which he indicated that Claimant was diagnosed with generalized seizures uncontrolled, diabetes mellitus II, DVT, pulmonary embolism, and others which are illegible. Identified symptoms were marked memory defect, labile, shallow or coarse affect, type II diabetes, insulin resistance, neuropathy, fatigue, and convulsions. Dr. Aswell also noted situational depression due to the loss of her husband. Regarding her functional capacity, Dr. Aswell indicated that she could not meaningfully stand/walk during a workday and she could sit for one hour during a workday. She could never lift or carry more than 10 pounds and could only occasionally lift or carry up to 10 pounds. Other activity restrictions were at least moderate but mostly totally restricted. Dr. Aswell stated that Claimant is totally disabled and unable to work part or full time. She was capable of signing her own checks but could not drive. (Rec. Doc. 10-1, p. 343-49).

- Dr. Justin Creel conducted an evaluation for the state disability department on November 6, 2020. After noting Claimant's past history, Dr. Creel opined that she cannot operate heavy machinery or automotive due to epilepsy, but that she ambulated without difficulty or assistive device. (Rec. Doc. 10-1, p. 352-57).

3

- Through at least March 2021, Claimant continued seeing Dr. Aswell, who noted that she was seeing a neurologist who was adding medications. Her diabetes was doing well, though she continued with depression. In January 2021, Claimant had concerns with falling and dropping things. A physical exam at that time showed weakness in her hands and arms. In February 2021, it was noted that her MRI had revealed white matter periventricular infarction and confluent subcortical white matter abnormalities. (Rec. Doc. 10-1, p. 369-82).

- A March 2021 MRI of her brain revealed nonspecific white matter disease with no enhancement or mass effect. (Rec. Doc. 10-1, p. 387-88). An MRI of her cervical spine at the same time revealed degenerative changes, mild canal stenosis at C5-6 and borderline stenosis at C6-7, and mild multilevel foraminal narrowing. (Rec. Doc. 10-1, p. 389-90).

- On April 23, 2021, Dr. Sandra Durdin, clinical psychologist, conducted an exam for the state disability department. Claimant advised she had never had mental health treatment, but her health issues caused her to be depressed and anxious. She reported being able to complete adaptive living tasks and lived alone with frequent checks by family. She had a license but did not drive due to the possibility of seizures. Dr. Durdin concluded her abilities to follow instructions, handle familiar details, sustain attention and productivity and get along with co-workers was not impaired. Her ability to sustain productivity over a forty hour work week was moderately impaired, and she was not likely to be dependable or reliable, because she was having seizures, was worried about her health, and was not driving. Her ability to withstand routine demands, pressure or expectations was moderately impaired, because she complained of malaise and was not likely to be consistently productive or reliable until she has health answers and symptom relief. Her prognosis was fair. (Rec. Doc. 10-1, p. 392-95).

- Claimant continued routine primary care with Dr. Charlotte Merrill, who managed her diabetes and medications, most recently through October 2021. She was noted as obese, with confirmed diagnoses as above. (Rec. Doc. 10-1, p. 405-21).

- Claimant has treated with the Neuro Medical Clinic for her seizure disorder since September 2015. Her diagnoses were clinically isolated syndrome, possible demyelinating disease of central nervous system, cerebral atherosceloris, diabetes mellitus due to underlying condition with diabetic polyneuropathy, idiopathic epilepsy and epileptic syndromes with seizures of localized onset. She

was taking Vimpat and Fycompa. At some point she was evaluated for multiple sclerosis, but there was determined to be no clear evidence of MS or other demyelinating disease. Each visit noted seizures had occurred since the prior visit. Most recently, in August 2021, she had two seizures in one day a month prior, associated with sleep deprivation. (Rec. Doc. 10-1, p. 440-66).

- In September 2021, Claimant treated with Dr. Robert Craig for her diabetic foot ulcer on her right foot. The toe was amputated due to destructive osteomyelitis. (Rec. Doc. 10-1, p. 537-40).

The ALJ found that Claimant suffered from the severe impairments of seizure disorder, obesity, diabetes mellitus with history of amputation, and history cerebral vascular accident. Nonetheless, the ALJ found Claimant was not disabled because she was capable of performing light duty work, subject to certain restrictions, and that she was thus capable of performing her past relevant work as a bookkeeper/financial clerk, which were sedentary positions. (Rec. Doc. 10-1, p. 20-27). Claimant challenges the ALJ's finding of non-disability.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

5

conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. **Entitlement to Benefits**

Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do

7

the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since August 27, 2020, the alleged onset date. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: seizure disorder, obesity, diabetes mellitus (with a history of amputation of right 5th toe in October 2021), and a history of cerebral vascular accident. (Rec. Doc. 10-1, p. 20). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 10-1, p. 22). Claimant does not challenge this finding.

The ALJ found Claimant had the residual functional capacity (RFC) to perform light duty work, able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk 6 hours; sit 6 hours, and non-exertional limitations of never working around hazards. (Rec. Doc. 10-1, p. 22-26). Claimant challenges this finding.

At step four, the ALJ found Claimant was capable of performing her past relevant work, which the vocational expert testified was classified at the sedentary exertional level and existed in significant numbers in the national economy. The ALJ further found that Claimant could adjust to other work. (Rec. Doc. 10-1, p. 26-27). Claimant challenges these findings to the extent she challenges the ALJ's RFC finding.

### E. The Allegations of Error

Claimant challenges the ALJ's RFC finding on two grounds: 1) the ALJ failed to consider Claimant's mental limitations in the RFC finding; and 2) the ALJ failed to address the consistency of Dr. Sandra Durdin's opinion with the other evidence.

### F. Whether the ALJ erred in rendering the RFC finding.

Claimant challenges only the ALJ's RFC finding that she is capable of performing light duty work, subject to restrictions. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record,

and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Claimant argues the ALJ failed to consider her mental limitations in developing the RFC and failed to give appropriate consideration to the state psychological consultant, Dr. Durgin. In considering the medical evidence in the record, the ALJ acknowledged the April 2021 psychological evaluation and further found that Claimant's symptoms of depression and anxiety were not severe impairments, referencing the preceding evaluation under §922 and SSR 85-28. (Rec. Doc. 10-1, p. 21-24). In analyzing Claimant's mental impairments, the ALJ discussed each area of mental limitation, including understanding, remembering and applying information (mild limitations), memory (intact), interacting with others

11

(mild limitation), concentrating, persisting, and maintaining pace (mild limitation), and adapting or managing oneself (mild limitation). (Rec. Doc. 10-1, p. 21). In reaching these conclusions, the ALJ relied on Dr. Durdin's evaluation as well as other evidence in the record regarding the impact of Claimant's mental impairments on her daily life and ability to work. Nonetheless, the ALJ found certain aspects of Dr. Durdin's conclusion (moderately impaired abilities to sustain productivity over forty-hour week and to withstand routine demands) to be unpersuasive, because the conclusions were based on Claimant's subjective report of limitation rather than clinical findings. Otherwise, the ALJ relied upon Dr. Durdin's other opinions that Claimant's abilities were unimpaired. (Cf. Rec. Doc. 10-1, p. 26 and 395). Having reviewed Dr. Durdin's report, the evidence in the record, and the ALJ's opinion, the Court finds no error in the ALJ's analysis of Claimant's mental impairments or their effects on her ability to work. At most, the record supports that Claimant's fear of seizures and anxiety over her health is her most significant mental concern; however, the record shows that these limitations have not affected her functioning to the extent that she could not be a reliable employee in the appropriate setting. She travels, attends church, maintains relationships, lives alone, and accomplishes her daily living tasks. (See e.g. Rec. Doc. 10-1, p. 254-60). Accordingly, Claimant's assignments of error are meritless.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 23rd day of June, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE